UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSE GUSTAVO PONCE VIGIL,

    Plaintiff,

v.                                                    Case No. 8:18-cv-1710-T-60CPT

PRIMASO, INC. and
IBRAHIM THALJI,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This cause is before me on referral for consideration of the *Plaintiff's Second Motion for Entry of Default Final Judgment*. (Doc. 31). For the reasons discussed below, I respectfully recommend that the Plaintiff's motion be granted in part and denied in part.

I.

    Plaintiff Jose Gustavo Ponce Vigil initiated this Fair Labor Standards Act (FLSA) action in July 2018 against his former employers, Defendant Primaso, Inc. (Primaso)—the operator of two convenience stores—and the individual who owns and/or manages Primaso's stores, Defendant Ibrahim Thalji. (Doc. 1). In brief, Vigil alleges he worked for the Defendants from November 2017 to May 2018 as a cook/store clerk. *Id*. He further asserts that he was paid $10 per hour for his

services, that he was classified as a non-exempt employee, and that, although he worked more than forty hours per week, he was not paid the overtime premium for those extra hours.  *Id.* at 4.  Based on these allegations, Vigil asserts one count for willful violation of the FLSA for the Defendants' failure to pay him overtime compensation.  *Id.* at 2-5.  To redress these alleged harms, Vigil seeks unpaid overtime wages, liquidated damages, as well as costs and attorney's fees.  *Id.* at 5.

Primaso and Thalji were served with summonses and the complaint in August 2018.  (Docs. 7, 8).  Neither Defendant responded to the complaint, however, and the Clerk of Court subsequently entered defaults against each of them in September 2018.  (Docs. 12, 13).  The Court denied without prejudice Vigil's later motion for default judgment to allow the Defendants an opportunity to appear in the case.  (Docs. 15, 20).

Thalji thereafter moved to set aside the Clerk's default against him.  (Doc. 23).  The Court granted that motion and directed that Thalji respond to Vigil's complaint on or before a deadline in late October 2018.  (Doc. 25).  When Thalji failed to comply with that deadline, Vigil again moved for a Clerk's default against him.  (Doc. 28).  The Court granted that motion in December 2019, and the Clerk entered a default against Thalji for a second time the following day.  (Docs. 29, 30).

In his instant motion, Vigil again seeks the entry of a default judgment against both Primaso and Thalji.  (Doc. 31).  In support of this relief, Vigil relies upon his answers to the Court's Interrogatories, in which he outlines his damages as $2,555 for unpaid overtime and an equal amount for liquidated damages.  (Doc. 10).  Vigil

also submits a declaration from his attorney, Christopher Copeland, regarding the attorney's fees and costs incurred in pursuing the action. (Doc. 31 at 18-28).

II.

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a plaintiff may apply to either the Clerk or the Court for a default judgment. Fed. R. Civ. P. 55(b).

Before granting such a motion, the courts must "ensure that it has jurisdiction over the claims and parties." *Sec. and Exch. Comm'n v. Martin*, 2019 WL 1649948, at *2 (M.D. Fla. Apr. 1, 2019), *report and recommendation adopted*, 2019 WL 1643203 (M.D. Fla. Apr. 16, 2019); *see also Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001) ("[W]hen entry of judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.") (quotation omitted).

Once jurisdiction is established, the Court may enter default judgment if "there is 'a sufficient basis in the pleadings for the judgment entered.'" *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (per curiam) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The showing required in this context "is similar to the factual showing necessary to survive a motion to dismiss for failure to state a claim." *Graveling v.*

*Castle Mortg. Co.*, 631 F. App'x 690, 698 (11th Cir. 2015) (citing *Surtain*, 789 F.3d at 1245); *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Thus, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). However, "while a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (internal alteration and quotation omitted).

If a claim for liability is adequately pleaded, the court must then assess its ability to measure damages. To this end, the "court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser-Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *see also Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for award). "Rather than merely *telling* the Court in summary fashion what its damages are, a plaintiff seeking default judgment must *show* the Court what those damages are, how they are calculated, and where they come from." *PNCEF, LLC v. Hendricks Bldg. Supply LLC*, 740 F. Supp. 2d 1287, 1294 (S.D. Ala. 2010).

If warranted, the court may conduct an evidentiary hearing on the issue of damages. Fed. R. Civ. P. 55(b)(2)(B). Such a hearing is "not a *per se* requirement," however, and is not mandated where the sought-after damages amount is a liquidated sum, is capable of mathematic calculation, or "where all [the] essential evidence is already of record." *SEC v. Smyth*, 420 F.3d 1225, 1232, n.13 (11th Cir. 2005) (citing *S.E.C. v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

Each of the considerations—jurisdiction, liability, and damages—is addressed in turn below.

### III.

### A.

Beginning with jurisdiction, it is clear that the Court has federal-question jurisdiction over Vigil's FLSA claim. 29 U.S.C. § 216(b) (FLSA actions may be brought "in any Federal or State court of competent jurisdiction"); 28 U.S.C. § 1331 (conferring original jurisdiction for "all civil actions arising under the Constitution, laws, or treaties of the United States"); *Quinn v. Dermatech Research, LLC*, 2019 WL 1586736, at *1 (M.D. Fla. Apr. 12, 2019) ("This Court has federal question subject matter jurisdiction due to the FLSA claims.").

The Court likewise has personal jurisdiction over the Defendants. As alleged in the complaint, Primaso is a Florida corporation with its principal place of business in Hillsborough County. (Doc. 1 at 1); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (noting that a corporate defendant's place of incorporation and/or principal place of business is a "paradigm" basis for the

exercise of general jurisdiction). As also alleged in the complaint, Thalji owned and operated Primaso's convenience stores. (Doc. 1 at 2). Furthermore, the returns of service filed in this action evidence that Primaso was properly served with the summons and complaint through its Registered Agent in accordance with Florida Statute § 48.081(3)(b), and that Thalji was personally served in accordance with Florida Statute § 48.031(1)(a). (Docs. 7, 8).

As a result, I find that the Court has jurisdiction over both the claims and the parties.

B.

Turning to the issue of liability, I also find that Vigil adequately pleads his claim under the FLSA's overtime provision. (Doc. 1). With limited exceptions not applicable here, the FLSA mandates that employers who meet the statute's preconditions pay their workers at a rate of one and one-half times the workers' regular rate of pay where the workers exceed forty hours per week. *Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1220 (11th Cir. 2010) (citing 29 U.S.C. § 206(a) and § 207(a)).

To trigger liability under the FLSA's overtime provision, a plaintiff must show: (1) an employee-employer relationship exists between the parties, and (2) he is "covered" by the FLSA. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1298 (11th Cir. 2011).

With respect to the former requirement, the FLSA defines the terms "employee" and "employer" broadly. *Id.* An employee is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), while an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d). As defined, an employer is accordingly not only a company for whom the employee directly works but also includes "any person who (1) acts on behalf of that employer and (2) asserts control over conditions of the employee's employment." *Josendis,* 662 F.3d at 1298 (citation omitted).

Vigil's allegations sufficiently demonstrate an employee-employer relationship between him and both Defendants. As noted, he claims, in particular, that he was employed by Primaso and Thalji as a cook/store clerk from November 2017 to May 2018. (Doc. 1 at 1, 4). Vigil also alleges that Thalji individually: (1) is the "owner/manager and operator" of Primaso and "was responsible [during the relevant time period] for running [Primaso's] day to day operation[s];" (2) "[h]ad the power to hire, fire and discipline" Vigil; (3) "[s]upervised and directed [Vigil's] work;" (4) "set and/or approved [Vigil's] hours of work;" and (5) "[h]ad control over the FLSA violations alleged." *Id.* at 2; *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1309 (11th Cir. 2013) ("[W]e have joined the 'overwhelming weight of authority' and held that 'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'") (citations omitted); *Elwell v. Pierce N Tell, LLC*, 2014 WL 12617813, at *2 (M.D. Fla. Mar. 6, 2014) (holding that

allegations about a company's owner and operator with direct supervisory responsibility over plaintiff were sufficient to state a cause of action under the FLSA against an individual and company) (citing *Patel v. Wargo*, 803 F. 2d 632, 638 (11th Cir. 1986)).

With respect to the coverage element, "a plaintiff employee must establish one of two types of coverage under the FLSA: (1) 'enterprise coverage,' which applies to the defendant employer, or (2) 'individual coverage,' which applies to the plaintiff employee." *Gaviria v. Maldonado Bros., Inc.*, 2014 WL 12531281, at *3 (S.D. Fla. Mar. 31, 2014) (citing *Martinez v. Palace*, 414 F. App'x 243, 244-45 (11th Cir. 2011) and *Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006)). Of relevance here, "[a]n employer falls within the FLSA's enterprise coverage if it meets two requirements: (1) it 'has employees engaged in commerce or in the production of goods for commerce, or . . . has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person' and (2) has an 'annual gross volume of sales made or business done,'" which is in excess of $500,000. *Id*. (quoting 29 U.S.C. § 203(s)(1)(A)); *see also Polycarpe*, 616 F.3d at 1220.

Vigil pleads in his complaint that Primaso qualifies as an enterprise because it (1) had annual gross volume of sales exceeding $500,000 per year and (2) was engaged in interstate commerce. In support of the latter assertion, Vigil avers that Primaso "daily transacted business across state lines;" "utilized interstate banking, phones and means of communication to conduct its business;" "utilized and sold

goods or items and/or services made, offered or transported over state lines;" or "otherwise engaged in the production of goods and or services for commerce." (Doc. 1 at 2-3). Vigil also alleges that he was "an employee engaged in interstate commerce as defined by the Act as he would, on a daily basis, use and sell items manufactured or conveyed in interstate commerce, transact business with companies and individuals across state lines and engage in other daily activities that constitute interstate commerce." *Id*. Accepting these allegations as true, I find that they suffice to establish enterprise coverage. *See Polycarpe*, 616 F.3d at 1220-29 (explaining the scope of enterprise coverage); *Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) ("[T]o properly allege . . . enterprise coverage, [the plaintiff] need not do much. Aside from stating the nature of his work and the nature of [his employer's] business, he must provide only straightforward allegations connecting that work to interstate commerce.") (collecting cases).

Once a plaintiff has established that an employment relationship and coverage exist, the remaining elements "to state a claim of a FLSA violation are quite straightforward." *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 763 (11th Cir. 2008). All that "must be shown [is] simply a failure to pay overtime compensation and/or minimum wages to covered employees." *Id.* Although *Labbe* is a non-binding, unpublished opinion and was decided pre-*Iqbal*, its teachings on the

"straightforward" pleading requirements for FLSA claims are instructive.[1] In short, an FLSA overtime plaintiff must plead sufficient facts, plausible on their face, to demonstrate that he worked more than forty hours in at least one workweek and that the defendant failed to pay the requisite premium for those overtime hours. *Cooley v. HMR of Ala., Inc.*, 259 F. Supp. 3d 1312, 1319 (N.D. Ala. 2017); *see also Stafflinger v. RTD Constrs., Inc.*, 2015 WL 9598825, at *2 (M.D. Fla. Dec. 14, 2015), *report and recommendation adopted*, 2016 WL 48110 (M.D. Fla. Jan. 5, 2016).

Vigil satisfies these pleading requirements. In support of his overtime claim, he alleges that he worked in excess of forty hours a week during the time he was employed and that the Defendants failed to compensate him at the time-and-a-half rate. (Doc. 1). In light of the above, I find that the well-pleaded allegations underlying Vigil's claim establish the Defendants' liability for violations of the FLSA's wage and hour provisions due to their non-payment of overtime wages.

---

[1] *Labee* must be read in light of the Supreme Court's decision in *Iqbal*. As noted by the Ninth Circuit:
> Although we agree with the Eleventh Circuit that detailed factual allegations regarding the number of overtime hours worked are not required to state a plausible claim, we do not agree that conclusory allegations that merely recite the statutory language are adequate. Indeed, such an approach runs afoul of the Supreme Court's pronouncement in *Iqbal* that a Plaintiff's pleading burden cannot be discharged by "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action . . . ."

*Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644 (9th Cir. 2014), *as amended* (Jan. 26, 2015) (internal citations omitted).

C.

On the matter of damages, an evidentiary hearing is unnecessary because, as detailed below, the amounts claimed by Vigil are for a sum certain subject to easy calculation and supported by Vigil's sworn integratory answers. (Doc. 10); *see also Clough v. McClure Constr. Co., LLC*, 2019 WL 1559661, at *2 (M.D. Fla. Mar. 25, 2019) ("A plaintiff may establish his or her damages by affidavit.") (citing *Adolph Coors*, 777 F.2d at 1544), *report and recommendation adopted sub nom. Clough v. McClure Constr. Co, LLC*, 2019 WL 1558667 (M.D. Fla. Apr. 10, 2019).

1. *Actual and Liquidated Damages*

Any employer who violates the FLSA's overtime provision is "liable to the employee . . . affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Liquidated damages must be awarded absent a finding that the employer acted in good faith and under the reasonable belief that it was in compliance with the FLSA. *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir. 1987) ("[L]iquidated damages are mandatory absent a showing of good faith.") (citation omitted); *see also Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272 (11th Cir. 2008).

In support of his FLSA overtime damages, Vigil attests in his affidavit that he worked 511 hours of overtime while he was employed by the Defendants. (Doc. 10 at 5). Based on a half-time rate calculation of $5 per hour, he claims he is owed $2,555 in overtime compensation and an equal sum for liquidated damages. *Id.* In

light of this evidence presented, I find that Vigil is entitled to actual and liquidated damages in the amount of $5,110.

### 2. *Attorney's Fees and Costs*

In addition to the above damages, the FLSA provides that successful plaintiffs, like Vigil, are entitled to an award of reasonable attorney's fees and "costs of the action." 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Costs are limited to those enumerated in 28 U.S.C. § 1920. *Glenn v. Gen. Motors Corp.*, 841 F.2d 1567, 1575 (11th Cir. 1988) ("[N]othing in the legislative history associated with [s]ection 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs as now enumerated in 28 U.S.C.A § 1920."). What constitutes a reasonable fee, however, is a matter within the court's sound discretion. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).

Beginning with costs, as reflected in attorney Copeland's declaration, Vigil seeks reimbursement of $400 for the Clerk's filing fee and $180 for service of process charges on both Defendants ($90 each). (Doc. 31 at 19). The filing fee is properly taxable as "fees of the clerk" under section 1920(1).

The service of process fee, on the other hand, is recoverable but at a reduced amount. I note in this regard that, while private process server fees are generally taxable under 28 U.S.C. § 1920(1), such fees may not exceed the statutory limit set forth in 28 U.S.C. § 1921, which is the allowable rate charged by the United States

Marshal's Service. *Beach Mathura v. Am. Airlines, Inc.*, 571 F. App'x 810, 812-13 (11th Cir. 2014) (reversing district court award for service of process fees that exceeded the allowable rate under section 1921); *U.S. Equal Emp't Opportunity Comm'n v. W&O, Inc.*, 213 F.3d 600, 624 (11th Cir. 2000). The Marshals are currently authorized to charge $65 per hour for each item personally served, plus travel costs and other out-of-pocket expenses. 28 C.F.R. § 0.114(a)(3). As a result, the requested service of process charges are limited to $65 for each Defendant. Accordingly, I recommend that costs be awarded in the total amount of $530.

With regard to attorney's fees, Vigil seeks $7,947.50 for 18.7 hours expended by attorney Copeland at an hourly rate of $425. (Doc. 31 at 19). The first step in calculating whether such an amount constitutes a reasonable fee is to determine the "lodestar," which is the product of the reasonable hours expended multiplied by a reasonable hourly rate. *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 686 (11th Cir. 2011) (per curiam) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)); *see also Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). In reaching the lodestar, courts may look to the factors articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *In re Home Depot Inc.*, 931 F.3d 1065, 1090-1091 (11th Cir. 2019) (quoting *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1352 (11th Cir. 2008) (per curiam)).[2]

---

[2] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or other

In determining the reasonableness of the hours expended, courts exclude "excessive, redundant, or otherwise unnecessary" hours an attorney could not appropriately bill the client or opposing counsel in the exercise of good billing judgment. *Norman*, 836 F.2d at 1301 (quoting *Hensley*, 461 U.S. at 434 & 437). "[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quoting *Norman*, 836 F.2d at 1299). In making this computation, the court is not tethered to the parties' submissions. Instead, because the court "'is itself an expert on the question [of reasonable hourly rates, it] may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Norman*, 836 F.2d at 1303 (quotation and citations omitted).

Once the lodestar has been determined, a court may then make adjustments "as necessary" given the circumstances of the case. *Padurjan*, 441 F. App'x at 686 (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)). Lodestar adjustments may account for whether the results obtained were exceptional, excellent, or of partial or limited success. *Norman*, 836 F.2d at 1302.

---

circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19. As the Eleventh Circuit recently explained, however, these factors are "almost always subsumed in the lodestar." *In re Home Depot*, 931 F.3d at 1091.

"Ultimately, the computation of a fee award is necessarily an exercise of judgment, because '[t]here is no precise rule or formula for making these determinations.'" *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001) (quoting *Hensley*, 461 U.S. at 436). That said, "[a] district court's 'order on attorney's fees must allow meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation.'" *In re Home Depot*, 931 F.3d at 1089 (quoting *Norman*, 836 F.2d at 1304). "In other words, the court must 'provide a concise but clear explanation of its reasons for the fee award.'" *Id.* (quoting *Hensley*, 461 U.S. at 437).

On appeal, an award of attorneys' fees and costs will be upheld unless it constitutes an abuse of discretion. *Perez v. Carey Intern., Inc.*, 373 F. App'x 907, 909-10 (11th Cir. 2010) (citing *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006)).

Based upon my review of the record, I find that the number of hours expended by attorney Copeland on this case is reasonable. As evidenced by his declaration, Copeland spent 18.7 hours to, *inter alia*, meet with Vigil, review his documents, prepare the complaint and damages spreadsheet, respond to the Court's interrogatories, apply for Clerk's defaults, review incoming Court orders, draft a Court-requested proposed final judgment, and compile the instant motion for default judgment. In my estimation, the time incurred conducting these tasks and litigating this action is within reason.

Copeland's requested hourly rate requires further discussion, however. Copeland asserts that he has been practicing law for more than twenty-five years, primarily litigating employment claims, and that his fee-paying clients regularly agree to an hourly rate of $425. (Doc. 31 at 18).[3] After careful consideration of the matter, I conclude that a modest reduction of the requested hourly rate is appropriate. Although Copeland is an experienced attorney, this was a straightforward FLSA action, apparently taken on a contingency-fee basis; the legal and factual issues presented were not complex or novel; Copeland's required time spent on the matter was not inordinate; and his acceptance of this case would not have precluded him other employment. Given Copeland's more than twenty-five years of experience, his skill, and his reputation, I find that an hourly rate of $375 is reasonable—although still at the high end of rates charged for similar cases in this community. *Rizzo-Alderson v. Tawfik*, 2019 WL 3324298, at *3 (M.D. Fla. July 1, 2019) ("[C]ourts in the Middle District have awarded rates between $250 and $375 per hour in FLSA cases.") (collecting cases), *report and recommendation adopted*, 2019 WL 3323432 (M.D. Fla. July 24, 2019); *De Leon v. Magnum Coatings, Inc.*, 2017 WL 8794773, at *2 (M.D. Fla. Nov. 7, 2017), *report and recommendation adopted*, 2018 WL

---

[3] While not explicitly addressed, it appears that Copeland accepted this case on a contingency basis, with the recovery of his attorney's fees premised upon the FLSA's fee-shifting provision.

1796227 (M.D. Fla. Jan. 10, 2018) (reducing hourly rate in FLSA case from $400 to $350 and collecting cases in support).[4]

Multiplying the reasonable number of hours incurred and the reasonable hourly rate, the lodestar for attorney's fees here is $7,012.50. I see no grounds to depart from this lodestar amount given the circumstances present in this case.

IV.

In light of all of the above, I recommend that the *Plaintiff's Second Motion for Entry of Default Final Judgment* (Doc. 31) be granted in part and that default judgment be entered in favor of the Plaintiff and against the Defendants in the total amount of $12,652.50.[5]

Respectfully submitted this 12th day of March 2020.

_____
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

---

[4] Taking into account inflation, the $350 per hour rate approved in *De Leon* in 2017 is roughly equivalent to $375 per hour now.

[5] This amount is calculated as follows: $2,555 in actual damages + $2,555 in liquidated damages + $530 in taxable costs + $7,012.50 in attorney's fees.

**NOTICE TO PARTIES**

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record
Any unrepresented party